The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, EXCEPT AS MODIFIED HEREIN under Stipulation number 5. Neither party has requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with the defendant employing three or more regular employees.
2. The date of any alleged injury by accident is 9 March 1993.
3. At all times pertinent hereto, there was an employee-employer relationship between the plaintiff and the defendant.
4. State Auto Insurance Company is the insurance carrier on the risk.
5. Plaintiff did not work for the defendant from 4 April 1993 and continuing through the date of the hearing.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner as follows
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 24 years old, with a date of birth of 17 September 1969. For his education, plaintiff left school in the tenth grade. For his work history, plaintiff worked on his uncle's farm after he left school; and he worked for Revlon from November 1990 through January 1991. Plaintiff began working for defendant in January or February 1993 (plaintiff 23 years old) as a daytime cook. Other than the two months with Revlon, the job with defendant was the only job plaintiff ever had away from his family.
2. For the purpose of assessing plaintiff's credibility, plaintiff had been convicted of passing worthless checks within ten years of the date of the hearing. The checks were for a total amount of $1,500.00 to $1,800.00. Plaintiff was sentenced to three years of supervised probation.
3. At the time of the hearing, plaintiff did not have a valid driver's license. Plaintiff had lost his driver's license in February 1993, and could have gotten the license back in February 1994 (about three months before the hearing); but plaintiff had chosen not to get the license back. The fact that plaintiff did not have a driver's license would effect his ability to be gainfully employed.
4. Plaintiff testified that his immediate supervisor, Randy Smith, harassed him at work. Plaintiff testified that his supervisor cursed him at several incidents; and on one occasion, his supervisor stomped him on the foot and knocked him into an oven, causing him to burn his arm. Plaintiff's supervisor denied plaintiff's allegations; none of plaintiff's co-workers corroborated plaintiff's accusations; and plaintiff offered no explanation for why his supervisor would act in this way towards him.
5. Plaintiff testified that on 9 March 1993 the following occurred: plaintiff was in the storage room to retrieve supplies for lunch buffet. While on his tiptoes pulling a box down from a top shelf, the box fell and hit plaintiff on his right foot. Plaintiff reported this to his supervisor, but the supervisor only walked away without comment. Plaintiff later reported this incident to Paul Bugay, the defendant's manager, and showed Mr. Bugay his foot, which was swollen.
6. Plaintiff first sought medical treatment on 23 March 1993. At this examination, plaintiff did not report to his doctor the alleged incident of 9 March 1993. Plaintiff continued to work from 9 March 1993 through 4 April 1993. During this time at work, plaintiff did not report any injury to any supervisor; and he told two co-workers that he hurt his foot playing basketball.
7. On 5 April 1993 plaintiff was given a doctor's excuse to be out of work from 5 April 1993 through 12 April 1993. Plaintiff's second examination by a doctor was on 13 April 1993; and at this examination, plaintiff reported to his doctor the alleged incident of 9 March 1993. Plaintiff was referred to Dr. Gary Kaplowitz for an orthopedic examination. Plaintiff also reported the alleged incident with defendant to Dr. Kaplowitz, but he gave the date as 22 March 1993 (the day before his first medical examination). At the examination of Dr. Kaplowitz, there was no instability of the right foot, but there was swelling laterally on the foot.
8. Plaintiff returned to Dr. Kaplowitz on 3 May and 23 May 1993. Dr. Kaplowitz assumed that the information plaintiff gave him was accurate; and based on this assumption, Dr. Kaplowitz was of the opinion that the alleged incident of 9 March 1993 aggravated a pre-existing condition in plaintiff's right foot and that as a result of the alleged incident of 9 March 1993, plaintiff retained a 5 percent permanent partial impairment to the use of his right ankle.
9. Plaintiff was examined on 4 June 1993 by Dr. Lawrence Frank at Durham-Chapel Hill Orthopaedic Associates. At this time, there was no sensory deficit of the right foot, muscle strength was 100 percent and the foot was non-tender to palpitation; however, there was a small, lateral sesamoid at the tip of the malleolus, and a small sesamoid posterior to the talus. Dr. Frank recommended a support stocking or Ace wrap to help the right ankle. A return appointment was made, but plaintiff did not return.
10. Plaintiff's last medical treatment was on 9 July 1993, when he received treatment for an injury to his left ankle which occurred when he stepped off a block two days earlier (the claim in the current case is an injury to his right ankle). Since July 1993 plaintiff has not sought any medical treatment.
11. Plaintiff claims the following: that he can stand no more than 15 minutes without severe pain and swelling in his right ankle. Due to this pain, he is unable to work at any job; and since leaving defendant's employment, plaintiff has not sought any employment. Plaintiff lives with his grandmother, who has supported him, although he would not ask for money from his family for medical treatment. The reason plaintiff has not sought further medical treatment after July 1993 (June 1993 for his right ankle) was because he could not afford the treatment.
12. Based upon plaintiff's demeanor at the hearing, the demeanor of other witnesses who contradicted plaintiff, the fact that plaintiff did not report any alleged accident during his first medical examination, and his conviction of a crime within ten years of the hearing, the undersigned finds that plaintiff's testimony was not credible. Because of plaintiff's lack of credibility, the undersigned finds that the incident, which plaintiff alleged to have occurred on 9 March 1993, did not occur; but instead, plaintiff injured his right ankle playing basketball.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
CONCLUSION OF LAW
1. On 9 March 1993 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
* * * * * * * * * * *
Based upon the conclusion of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusion of law engender the following
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay its own costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER
BSB:md